UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARTURO NORIEGA, § | | |
| TDCJ No. 1890548, § | | |
| Petitioner, § | | |
| § | | |
| v. § | CIVIL NO. SA-16-CA-918-XR | |
| § | | |
| LORIE DAVIS, Director, § | | |
| Texas Department of Criminal Justice, § | | |
| Correctional Institutions Division, § | | |
| Respondent. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Arturo Noriega's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket Entry "DE" 1) and Respondent's Answer (DE 7) thereto. Petitioner has paid the applicable filing fee for this cause and is proceeding *pro se*.

In October 2013, Noriega entered an open plea of guilty in Bexar County to felony murder and was subsequently sentenced to life imprisonment. He now challenges the constitutionality of his state court conviction and sentence, arguing that (1) his plea of guilty was involuntary due to the ineffective assistance of his trial counsel; (2) he received ineffective assistance on direct appeal by counsel's failure to adequately brief the harm analysis of his Fourth Amendment claim; and (3) his Fourth Amendment claim was erroneously denied on direct appeal. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

### I. Background

On the evening of September 4, 2011, Noriega ran a red light and crashed into a vehicle driven by Richard Casas, who later died as a result of his injuries. Noriega was transported to a

local hospital where his blood was drawn on two occasions—the first by emergency room personnel in the ordinary course of evaluating and treating him, and the second at the direction of law enforcement pursuant to Texas's implied-consent law codified in Texas Transportation Code § 724.012(b). The test results from each of these blood draws indicated Noriega's blood-alcohol level was at least twice the legal limit of .08, and that he tested positive for cocaine. On May 6, 2013, Noriega was charged by indictment with felony murder, intoxication manslaughter, and manslaughter, and the use of a deadly weapon was alleged for the purpose of enhancing the punishment.[1] (DE 8-3 at 6-7).

Prior to trial, Noriega attempted to suppress the results of the warrantless blood draw taken by law enforcement officials, arguing no exigent circumstances existed as an exception to the warrant requirement of the Fourth Amendment and that § 724.012(b) is unconstitutional and does not provide an exception to the warrant requirement. Following an extensive hearing on the matter held September 30, 2013 (DE 8-6 at 11-48), the trial court denied Noriega's motion to suppress the blood-draw evidence. (DE 8-3 at 75-78). On October 2, 2013, Noriega pleaded guilty to felony murder and, after a separate punishment proceeding, was sentenced to life imprisonment. *State v. Noriega*, No. 2013-CR-4087 (175th Dist. Ct., Bexar Cnty., Tex. Oct. 4, 2013).

On direct appeal to the Fourth Court of Appeals, Noriega challenged the trial court's denial of his motion to suppress, arguing the admission of the blood-draw evidence at punishment quantified the degree of his intoxication and thus resulted in a life sentence. Although rejecting the State's argument that § 724.012(b) dispenses with the warrant requirement, the court of appeals nonetheless concluded that, "even if the trial court erred in denying [Noriega]'s motion to suppress the results of the statutory blood draw based on the

---

[1] The State later waived the second and third counts. (DE 8-7 at 15).

2

existence of exigent circumstances, [Noriega] was not harmed." *Noriega v. State*, 2014 WL 7339735, No. 04-13-744-CR (Tex. App.—San Antonio, Dec. 23, 2014, pet. ref'd). After first observing that, during closing arguments at the punishment phase, the State did not mention Noriega's blood-alcohol level but instead reminded the jury of his three previous convictions for driving while intoxicated, the court of appeals stated its disbelief that the jury would have assigned much weight to the statutory blood-draw evidence in light of the other extensive evidence of his intoxication. *Id.* The court described this evidence in detail:

> In this case, on the morning of the accident, [Noriega] was in a bunkhouse shared with other men on his oil field crew. [Noriega] admitted he started drinking Natural Light "tall boys" (either the sixteen- or twenty-four-ounce size) at about 9:00 a.m. After he finished his first beer, he drank a second beer, and then a third. [Noriega] said that at about 11:45 a.m., he left the bunkhouse to buy a twelve-pack of Bud Light beer for himself. [Noriega] could not remember if he put the beer into the refrigerator, but he did remember drinking at least one can, after which he used cocaine. [Noriega] could not remember what time he left the bunkhouse to drive back to San Antonio, but he thought it was in the afternoon. [Noriega] said the beer was in the back of his truck, and the only beer can in the cab of the truck was the one empty Bud Light can he had taken with him from the bunkhouse. [Noriega] did not remember drinking any more than four beers. [Noriega] admitted he was intoxicated, but not to what extent.
>
> Dr. John Eastridge, the emergency room physician who treated [Noriega] when he was brought to the hospital, testified about the blood draw that was taken from [Noriega] as part of an initial physical evaluation. Eastridge said [Noriega] tested positive for both alcohol and cocaine. Although Eastridge could not quantify the cocaine results, he said [Noriega]'s blood results showed an alcohol concentration at three times the legal limit. The accident happened at 5:24 p.m., and this blood draw was taken at 6:53 p.m., approximately ninety minutes after the accident.
>
> The jury heard five different witnesses who testified they smelled alcohol on [Noriega]'s breath immediately after the accident. Four of these witnesses also stated they saw anywhere from two to five empty beer cans inside [Noriega]'s vehicle. One of the paramedics who treated [Noriega] at the scene said [Noriega] admitted to drinking three beers before the accident. Several witnesses stated [Noriega]'s speech was slurred, and he was uncooperative and belligerent with the first responders. Other drivers at the scene said [Noriega] was driving at a high rate of speed and two drivers who were behind [Noriega] said he never braked before running the red light.

> One of the paramedics, Saul Obregon, testified [Noriega] knew he had been in an accident, but did not know what happened. Obregon said that during the ride to the hospital in the ambulance, [Noriega] was uncooperative, attempted to remove the cardiac monitor electrodes, did not want the blood pressure cuff on his arm, and attempted to pull out the IV. Obregon did not believe [Noriega]'s behavior was consistent with having drunk only the three beers [Noriega] admitted to drinking. Clint Fallen, a San Antonio police officer dispatched to the scene of the accident, said he first approached [Noriega] while EMS was attending to him. Fallen said [Noriega] was "very belligerent," did not want anyone to touch him, was flailing his arms about, and was cussing. When Fallen asked [Noriega] what happened, [Noriega] said "that f**king idiot pulled in front of him." When Fallen asked [Noriega] if he was aware of the other driver's condition and when told how badly the other driver was injured, [Noriega] said "I don't f**king care."
>
> We conclude the jury could infer the degree of [Noriega]'s intoxication from this circumstantial evidence and thereby assess the appropriate level of punishment. Therefore, on this record, we can conclude beyond a reasonable doubt that the alleged error did not contribute to [Noriega]'s punishment.

*Id.*

The Texas Court of Criminal Appeals refused Noriega's petition for discretionary review on April 22, 2015. *Noriega v. State*, No. 0210-15 (Tex. Crim. App.). On March 7, 2016, Noriega filed a state habeas corpus application, which the Texas Court of Criminal Appeals later denied without written order on August 17, 2016, on the findings of the trial court without a hearing. The instant federal petition was filed a month later on September 12, 2016.

## II. Standards of Review

### A. Review of State Court Adjudications

Noriega's federal petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable

4

determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Noriega must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

Furthermore, except for the narrow exceptions contained in § 2254(e)(2), a habeas petitioner is precluded from further factual development in federal court and must rely on the

5

evidence presented to the state court when challenging a state court finding. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Pinholster* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review" and this Court's review "is limited to the record in existence at the time [of the state court decision], i.e., the record before the state court." *Id.*

### B. Review of Sixth Amendment Claims

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Id.* at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and

strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). As the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. For this reason, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689)).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because this showing of prejudice must be "rather appreciable," a mere allegation of prejudice or the possibility of a different outcome is not sufficient to satisfy the prejudice prong of *Strickland*. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). As the Supreme Court explained: "[T]he question in conducting *Strickland*'s prejudice analysis is *not* whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel [had] acted differently." *Richter*, 562

U.S. at 111 (emphasis added) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009)). Rather, the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, this Court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Pinholster*, 563 U.S. at 190); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (same). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards, but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

### III. Analysis

#### A. IATC Claim Challenging the Guilty Plea (Claim 1).

In his first allegation, Noriega argues that his trial counsel rendered ineffective assistance by failing to subject the State's blood-draw evidence to meaningful adversarial testing. According to Noriega, the failure to adequately challenge the blood-draw evidence led counsel to incorrectly advise Noriega to plead guilty, which forfeited a viable Fourth Amendment claim that would have resulted in a new trial on appeal. Noriega is correct that his guilty plea waived his Fourth Amendment allegations. *See* Section III(C) below. However, the record does not support Petitioner's claim that his guilty plea was in any way unknowingly or involuntarily entered, much less that counsel's performance was either deficient or that he was somehow prejudiced by

8

any alleged deficiency. Indeed, this allegation was rejected by the state court during Noriega's state habeas proceedings. (DE 9-7 at 133-144). Because the state court's merits adjudication was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, federal habeas relief is unavailable. *Richter*, 562 U.S. at 101.

To start, a voluntary guilty plea waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 265 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013); *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008). This includes errors of constitutional dimension. *United States v. Broce*, 488 U.S. 563, 573-74 (1989). Thus, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

A guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case indicates Petitioner's plea was a voluntary and intelligent choice. On the day of his trial, Noriega appeared before the trial court and indicated his desire to plead

guilty. (DE 8-8 at 8). He was admonished by the trial court about the range of punishment he was facing and that there was no agreement in place in exchange for his plea of guilty. Noriega stated he understood. Noriega also acknowledged he was satisfied with the representation of counsel, and stated his plea was being given freely and voluntarily and that no one had coerced, threatened, or pressured him to plead guilty. (DE 8-8 at 10). He further stated he was entering a plea of guilty because he was guilty and for no other reason. *Id.* After being fully admonished, Noriega entered a plea of guilty to the offense of felony murder. These formal declarations in open court carry a strong presumption of verity and constitute a formidable barrier to any subsequent collateral attack. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014). "The subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal." *Blackledge*, 431 U.S. at 74. Noriega has not provided any evidence or argument that would overcome this strong presumption.

Furthermore, Noriega has not established that his counsel rendered ineffective assistance and counsel's actions compelled him to plead guilty. The appropriate standard to evaluate the effectiveness of counsel with regard to a guilty plea is the familiar *Strickland* two-part test. *Hill*, 474 U.S. at 58 (citing *Strickland*, 466 U.S. at 668). Again, the petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688–89. But, in the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d at

206 (citations omitted). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id.*

Petitioner asserts that his plea was involuntary because counsel advised him to plead guilty after failing to subject the State's blood-draw evidence to meaningful adversarial testing. Aside from the fact that Noriega fails to indicate what "meaningful adversarial testing" should have been conducted, the record in this case demonstrates that counsel performed reasonably. Prior to trial, counsel attempted to suppress the results of the warrantless blood draw taken at the direction of law enforcement officials, arguing Texas Transportation Code § 724.012(b) is unconstitutional and that no exception to the warrant requirement of the Fourth Amendment existed. (DE 8-3 at 75-78). The trial court denied counsel's motion to suppress the blood-draw evidence after an extensive hearing on the matter. (DE 8-6 at 11-48). Although counsel did not challenge the admission of the blood draw taken by hospital staff for medical purposes, he explained this decision in an affidavit submitted during Noriega's state habeas proceedings:

> There were two separate blood draws; a "legal" draw and a "medical" draw. The "legal" draw was conducted at the hospital at the direction of the investigating law enforcement agency for the purpose of use in possible (and resultant) legal proceedings. The "medical" draw was conducted by the hospital at the direction of the treating medical physicians and staff for treatment purposes.
>
> Both blood draws were above the legal limit of intoxication. The only sample subject to suppression and therefore exclusion was the "legal" draw. Even if the results of the "legal" draw were suppressed and said results excluded, the results of the "medical" draw would have remained admissible.

(DE 9-7 at 116). Thus, Noriega's conclusory assertion regarding counsel failing to adequately challenge the blood-draw evidence is insufficient to raise a constitutional claim. *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Regardless, even assuming counsel was deficient, Noriega still cannot show he would not have pleaded guilty and would have instead insisted on going to trial but for counsel's error.

11

*Armstead*, 37 F.3d at 206. Again, such an assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id.* The record is silent as to whether Noriega would have made the decision to plead not guilty and go to trial had counsel done more to exclude the results of the "legal" blood draw. But as counsel points out in his affidavit, any such argument dismisses the fact there was a second blood-draw sample indicating a blood-alcohol level more than double the legal limit which was admissible even if the "legal" blood draw had actually been suppressed. Further, the record of Noriega's open plea to the court indicates he understood the charges against him and the range of punishment, admitted he committed the charged offense, and he was satisfied with the advice of counsel. (DE 8-8 at 8-10). Thus, based on the record before the Court, it appears unlikely Petitioner would have chosen to go trial.

In light of the record evidence supporting the voluntariness of his guilty plea, in addition to the fact Noriega failed to prove counsel's performance was deficient or his plea was involuntary due to ineffective assistance of counsel, this Court must find Noriega entered into his plea voluntarily, knowingly, and intelligently. Moreover, Noriega completely failed to prove that, but for his attorney's actions, he would have chosen to proceed to trial. Petitioner has therefore failed to establish a claim of ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Accordingly, federal habeas relief must be denied because Petitioner fails to meet his burden of proof under the AEDPA. 28 U.S.C. § 2254(d).

**B.    Appellate Counsel's Performance (Claim 2).**

In his second claim for relief, Noriega alleges that his appellate attorney was ineffective because he failed to adequately brief the harm analysis on the Fourth Amendment claim raised during direct appeal. Specifically, Noriega argues counsel failed to show the court of appeals that everything after the trial court's erroneous denial of his motion to suppress was affected by

the error, including his decision to plead guilty. Similar to his previous claim, this allegation was rejected by the state court during Noriega's state habeas proceedings. (DE 9-7 at 141). Because Noriega has not shown this rejection on the merits to be contrary to, or an unreasonable application of, the *Strickland* standard, federal habeas relief is unwarranted. *Richter*, 562 U.S. at 101.

A criminal defendant is constitutionally entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The familiar standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies equally to both trial and appellate attorneys. *Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2003) (citing *Robbins*, 528 U.S. at 285). Thus, to obtain relief, Noriega must demonstrate that his appellate counsel's performance was deficient and that such deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. Noriega does neither.

Noriega contends that his appellate counsel rendered ineffective assistance by inadequately arguing that he was harmed by the trial court's denial of his motion to suppress because it affected his decision to plead guilty. Appellate counsel responded to this allegation in an affidavit submitted during Noriega's state habeas proceedings. (DE 9-7 at 118-21). In his affidavit, counsel explains: (1) he did not argue that the denial of the pretrial suppression motion influenced the decision to plead guilty because "there is simply nothing in the record to support it;" (2) the record shows Noriega was thoroughly admonished before entering the plea; (3) Noriega explicitly agreed that he was satisfied with his trial counsel, and that his plea was given freely and voluntarily; (4) no such claim was raised in Noriega's motion for new trial; and (5) Noriega never asked him to raise such a claim either on direct appeal or in the amended motion

for new trial he filed on Noriega's behalf. *Id.* Because counsel's strategic decision not to include Noriega's guilty plea in the harm analysis clearly fell within the wide range of "reasonable professional assistance," Noriega fails to establish that appellate counsel was deficient. *Strickland*, 466 U.S. at 689.

Similarly, Noriega fails to establish he was prejudiced as a result of appellate counsel's alleged failure to adequately brief the issue on direct appeal. *Id.* at 687. In the context of appellate counsel, a petitioner must demonstrate a reasonable probability that he would have prevailed on appeal in order to establish prejudice. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). As counsel noted in his affidavit, however, "[t]here was nothing in the record or elsewhere to support a claim that the erroneous ruling on the pretrial suppression had any effect on [Noriega]'s decision to plead guilty." (DE 9-7 at 121). Moreover, any such argument dismisses the sizable amount of evidence other than the "legal" blood draw that demonstrated Noriega's intoxication, including the fact there was a second blood-draw sample indicating a blood-alcohol level more than double the legal limit which was not subject to suppression. *See Noriega v. State*, 2014 WL 7339735, at *2-4. As discussed previously, the record of Noriega's open plea to the court also indicates he understood the charges against him and the range of punishment, admitted he committed the charged offense, and he was satisfied with the advice of counsel. (DE 8-8 at 8-10). Consequently, there is no evidence to suggest Petitioner would have chosen to go trial had trial counsel properly challenged the "legal" blood draw, much less that he would have prevailed on appeal had appellate counsel included his decision to plead guilty as part of the harm analysis concerning his Fourth Amendment claim. *Robbins*, 528 U.S. at 285-86.

Again, the burden of proving the instant claim lies solely on Noriega. *Strickland*, 466 U.S. at 687. Here, the question of whether counsel was deficient for failing to adequately brief a

claim on appeal is inextricably linked to the merits of the claim allegedly neglected. Because it has been shown that the claim lacks merit and that counsel's decision not to include the claim in his direct appeal was a reasonable strategic decision, Noriega cannot now show that appellate counsel was deficient. He is likewise precluded from demonstrating prejudice arising from the absence of the claim on direct appeal. Accordingly, Noriega has not shown the state court's rejection of this claim was either contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *Richter*, 562 U.S. at 101. Federal habeas relief is therefore unavailable.

C. **The Fourth Amendment Claim** (Claim 3).

Petitioner's third and final claim for relief challenges the denial of his Fourth Amendment allegations on direct appeal. But as discussed previously, Noriega's voluntary plea of guilty waived all non-jurisdictional defects preceding the plea. *Tollett*, 411 U.S. at 265. This includes claims objecting to searches and seizures under the Fourth Amendment. *United States v. Cothran*, 302 F.3d 279-285-86 (5th Cir. 2002); *United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999). Because Noriega's plea was voluntarily, knowingly, and intelligently entered, federal habeas relief on his Fourth Amendment allegations is unavailable.

Regardless, relief on Noriega's Fourth Amendment allegations is barred pursuant to the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 494 (1976). Under *Stone*, if the State has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief may not be granted to a state prisoner on that claim. *Id.* Indeed, if the State provides the necessary processes to raise a Fourth Amendment claim, *Stone* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Shislnday v. Quarterman*, 511 F.3d 514,

524 (5th Cir. 2007). The *Stone* bar "applies to all claims arising under the Fourth Amendment," including challenges to an arrest or the seizure of evidence. *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005).

The State of Texas does have a process that allows defendants to litigate Fourth Amendment claims at the trial level and on direct appeal. *Register*, 681 F.3d at 628. In this case, Petitioner did both, raising his Fourth Amendment claims at the trial level through a motion to suppress and again on direct appeal. He makes no argument that his opportunity in the state courts to challenge the admissibility of evidence under the Fourth Amendment was circumscribed in any way, nor has he alleged "the processes provided by the state to fully and fairly litigate Fourth Amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of Fourth Amendment claims on their merits." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). Consequently, his allegations, in addition to being waived by the guilty plea, are barred from federal habeas review.

## IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a

different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Noriega was not entitled to federal habeas relief. As such, a COA will not issue.

## VI. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Noriega's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Arturo Noriega's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

SIGNED this 2nd day of May, 2017.

XAVIER RODRIGUEZ
United States District Judge

17